DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BARIAN KEITH PARRISH, JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-1991

[September 8, 2021]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Charles A. Schwab, Judge; L.T. Case No. 562016CF001852A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

### ON APPELLANT'S MOTION FOR REHEARING EN BANC AND/OR MOTION FOR REHEARING

ARTAU, J.

We deny the appellant's motion for rehearing en banc, grant the appellant's motion for rehearing, withdraw our prior opinion, and substitute the following in its place.

A jury convicted the defendant of multiple crimes, including four felony-facilitation kidnapping convictions arising out of his participation in a robbery of an auto parts store and its employees and customers one night in the summer of 2016. While we affirm three of the kidnapping convictions challenged on appeal, we reverse one of them because the evidence was insufficient under the three-part test set forth in *Faison v. State*, 426 So. 2d 963 (Fla. 1983), to support the commission of that kidnapping count. Instead, we remand on that count pursuant to section 924.34, Florida Statutes (2015), for entry of a judgment of conviction for

the lesser included offense of false imprisonment while armed and masked.

## I. The Charges

The State charged the defendant with one count of burglary, six counts of robbery, and six counts of felony-facilitation kidnapping. The State alleged the defendant kidnapped each of the victims by "forcibly, secretly, or by threat confining, abducting, or imprisoning" them against their will and without lawful authority with the intent to "[c]ommit or facilitate [the] commission of" the underlying burglary and robberies, in violation of section 787.01(1)(a)2., Florida Statutes (2015).

The evidence presented at trial primarily centered on the issue of identity—whether the defendant was one of the perpetrators of the crimes. However, because the evidence presented to the jury established the defendant's participation in these crimes beyond a reasonable doubt, our focus is on the manner in which these crimes were committed.

Shortly before the auto parts store closed on the evening in question, three masked gunmen entered the store. Three employees, including the manager, and three customers were in the store at the time. One of the gunmen approached the manager, who was assisting a customer, pressed a gun to the back of the manager's head, and ordered everyone to get on the ground. The manager and two customers near him complied with the gunman's directive and got down on the ground.

The gunman grabbed the manager by his shirt and led him to the back of the store to open the safe. The gunman and the manager encountered another employee taking out the trash in the back of the store. The gunman yelled for this employee to get down. After the employee complied, the gunman took his wallet and cell phone.

Meanwhile, the other two gunmen, one of whom was the defendant, remained with the two customers and one of the employees. When this employee refused to comply with the gunmen's commands, one of the gunmen grabbed him by the collar, threw him back down on the floor, and dragged him by his belt to the middle of the store. After being violently dragged into compliance, this employee and the two customers acquiesced to the gunmen's commands to crawl to a room in the back of the store where they were robbed of their personal belongings, including their jewelry, money, credit cards, cellphones, and car keys, and held at gunpoint in the back room where they could not be seen through the

2

storefront's transparent glass while the gunmen completed their burglary and robbery of the store.

The manager was still with the other gunman at the safe when the employee and two customers finished their crawl to the back of the store. The third customer in the store at the time was found by one of the gunmen in an area away from the others towards the back of the store. This customer was ordered to turn over his valuables but was not forced at gunpoint to crawl to the back of the store.

After the gunmen had taken all the money from the back safe as well as a black box located near the safe, one of the gunmen took a chain from around the manager's neck and ordered him to return to the front of the store to open the cash registers. Once the three gunmen had retrieved all the money from the cash registers, as well as the manager's valuables, including his cellphone, credit cards, keys and $200 in cash, they left the store through the front entrance.

The manager immediately locked the front doors and called 911.

## II. Defense Motion for Judgments of Acquittal

At the close of the State's case, defense counsel moved for judgments of acquittal on the kidnapping charges. Defense counsel argued that the State's evidence failed to satisfy the *Faison* test for determining whether the victims' confinement during the burglary and robberies was sufficient to constitute the separate crime of felony-facilitation kidnapping. Specifically, defense counsel argued the confinement and movement of the victims during the criminal episode was inherent "to the act of robbery." Defense counsel further argued no hostages were taken during the criminal episode and the victims were never locked in a room evidenced by the fact that their confinement ceased when the accompanying crimes ended.

The trial court found the evidence did not satisfy the *Faison* test as to the two kidnapping counts involving the employee first encountered by a gunman while taking out the trash in the back of the store as well as the customer encountered by a gunman towards the back of the store. As a result, the trial court submitted those two counts to the jury only as false imprisonment counts.

On the remaining four kidnapping counts, the trial court found sufficient evidence existed of confinement and movement of those victims away from the storefront's transparent glass to make the underlying

3

felonies easier to commit and lessen the risk that the commission of the crimes would be detected by "the outside world." Accordingly, the trial court denied defense counsel's motion as it related to the four kidnapping counts on appeal and submitted those counts to the jury, which returned guilty verdicts on each.

### III. The Supreme Court's *Faison* Test

Several decades ago, in *Mobley v. State*, 409 So. 2d 1031, 1034 (Fla. 1982)—which was the first case from our supreme court construing Florida's kidnapping statute—the supreme court addressed its concern that the statute could result in "any criminal transaction which inherently involves the unlawful confinement of another person, such as robbery or sexual battery," also being a kidnapping in violation of the common law single transaction rule. Thereafter, the supreme court in *Faison* adopted a three-part test for determining when confinement during the commission of another felony will be sufficient to constitute the separate offense of kidnapping. 426 So. 2d at 965-66. Under the *Faison* test, the confinement necessary to support a kidnapping alleged to have facilitated the commission of another felony:

> (a) Must not be slight, inconsequential and merely incidental to the other crime [prong 1];
>
> (b) Must not be of the kind inherent in the nature of the other crime [prong 2]; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection [prong 3].

*Id.* at 965.

A few years later, in *Ferguson v. State*, 533 So. 2d 763, 764 (Fla. 1988), the supreme court applied the *Faison* test in the context of a case on appeal from this court involving a kidnapping committed to facilitate a robbery. In *Ferguson*, after the robbery of a fast-food restaurant was complete, the defendant forced the manager and three employees at gunpoint outside the store and into a restroom located in the rear of the store. *Id.* The defendant told the victims to stay inside the restroom as he made his escape. *Id.* However, the case did not turn on whether the confinement ceased when the accompanying crime ended. Nothing in the supreme court's opinion in *Ferguson*, or this court's underlying opinion in

that case, indicated the door to the restroom was in any way locked or barricaded by the defendant. *Id.*; *Ferguson v. State*, 519 So. 2d 747, 747 (Fla. 4th DCA 1988). Nonetheless, the supreme court determined the confinement of the victims was sufficient to meet the definition of kidnapping under *Faison*'s three-part test. *Ferguson*, 533 So. 2d at 764. Specifically, the supreme court explained:

> First, the movement was not slight, inconsequential, or incidental to the robbery because the victims were *forced* out of the restaurant *at gunpoint* and into a restroom located in the rear. Second, the asportation was not inherent in the nature of the crime because the robbery could have been committed on the spot without any movement whatsoever. Third, the confinement was intended to make it more difficult for the victims to identify the perpetrator and immediately call for help.

*Id.* (emphasis added). In reaching those conclusions, the supreme court observed:

> The duration of the confinement is not an integral part of the test even though it may bear on whether the confinement was slight or inconsequential. Moreover, the determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose. The question is whether the initial confinement was intended to further either of these objectives.

*Id.* In affirming the kidnapping convictions, the supreme court approved of this court's opinion, and disapproved of the first district's application of the *Faison* test in *Chaney v. State*, 464 So. 2d 1261 (Fla. 1st DCA 1985). *Ferguson*, 533 So. 2d at 764-65. As the supreme court explained, the first district in *Chaney* had held facts substantially similar to those at issue in *Ferguson* to have been insufficient to support a separate kidnapping of an employee forced at gunpoint into a barricaded bathroom at the conclusion of a robbery. *See id.* at 764 (summarizing facts in *Chaney*).

In *Walker v. State*, 604 So. 2d 475, 476-77 (Fla. 1992), the supreme court again applied the *Faison* test in the context of a case involving an alleged kidnapping committed to facilitate the robbery of a convenience store. The facts relevant to the *Faison* analysis, as summarized by the supreme court in *Walker,* were as follows:

5

At approximately 9:30 p.m., [the defendant] entered a convenience store. After taking money from the cash register and from a customer, [the defendant] ordered all four of the occupants of the store to go to the back of the store and lie on the floor. Three individuals moved a distance of thirty to forty feet *but did not lie down*. The fourth individual moved a distance of ten feet after [the defendant] threatened to shoot him. [The defendant] immediately left the store, and the clerk locked the door to the store and called the police.

*Id.* at 476 (emphasis added). The supreme court determined the evidence in *Walker* was insufficient to meet the *Faison* test's first prong because "[t]he limited movement and confinement of the four occupants within the interior of the store were not significant." *Id.* at 477. The supreme court also noted that "the facts relied upon to support the kidnapping occurred within a matter of seconds." *Id.*

In *Berry v. State*, 668 So. 2d 967, 968-69 (Fla. 1996), the supreme court once again applied the *Faison* test in the context of a case, again on appeal from this court, involving kidnappings committed as part of a home invasion robbery. The defendant and "several other individuals" entered an apartment and robbed the resident and his friend at gunpoint. *Id.* at 968. The friend's hands were "tied behind his back with a hanger and his feet were tied together with a telephone cord." *Id.* The friend was then "made to kneel down with his chest over a dining room chair" while "the robbers forced [the resident] to walk from room to room of the apartment to show them where valuable items were located." *Id.* When the robbery was complete, the resident's hands were tied behind his back and his legs were tied to his hands, "leaving him face down on the floor." *Id.* The defendant and his fellow perpetrators "left the apartment without untying the two men." *Id.* The resident "freed himself shortly thereafter and, after leaving the apartment to call the police, returned and untied" his friend. *Id.*

The supreme court approved this court's decision affirming the defendant's kidnapping convictions and disapproved the first district's decision in *Brinson v. State*, 483 So. 2d 13 (Fla. 1st DCA 1985), involving substantially similar facts, and with which this court had certified conflict. *Berry*, 668 So. 2d at 968, 970. While the supreme court concluded that the evidence presented in *Berry* met the *Faison* test, it made the following observations regarding the *Faison* test's first prong:

We construe this prong to mean that there can be no kidnapping where the only confinement involved is the sort

6

that, though not necessary to the underlying felony, is likely to naturally accompany it. For example, if [the defendant] and the others had confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction could not stand. In both hypotheticals, any confinement accompanying the robbery would *cease naturally* with the robbery. By contrast, in this case the robbers left the scene of the robbery without untying the victims, thereby leaving them both in a precarious and vulnerable state for a period beyond the robbery. Like the situation where the victim of a forcible felony is barricaded or locked in a room or closet, the confinement continued even after the robbery had ceased. This is not the sort of confinement that is incidental to robbery.

*Id.* at 969 (emphasis added).

As this court has explained:

[A] remark made in pronouncing an opinion and which concerns some rule, principle or application of law not necessarily involved in the case or essential to its determination is obiter dictum, pure and simple. While such dictum may furnish insight into the philosophical views of the judge or the court, *it has no precedential value.*

*Bunn v. Bunn*, 311 So. 2d 387, 389 (Fla. 4th DCA 1975) (emphasis added).

Thus, the hypotheticals discussed by the supreme court in *Berry* are dicta. They do not constitute part of the holding in that case. This is clear not only from the supreme court's statement that it was discussing "hypotheticals," *Berry*, 668 So. 2d at 969, but also from the supreme court having already determined in *Ferguson* that being placed in an unlocked and unbarricaded restroom at the conclusion of a robbery was sufficient confinement, separate from an underlying robbery, to support a kidnapping. *Ferguson*, 533 So. 2d at 764; *see also generally Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002) ("Where a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding.").

7

Moreover, the supreme court in *Berry* specifically declined to "revise the test in *Faison*." *Berry*, 668 So. 2d at 970. The defendant in *Berry* had urged the supreme court to adopt two additional prongs to the *Faison* test, one of which would have required "a substantial break between the underlying felony and the kidnapping" to address the timing of the conclusion of a victim's confinement during or after an accompanying crime. *Id.* In declining to revise the three-part test, the supreme court reasoned:

> While we agree that the current test is not an easy one to apply, we attribute this difficulty not to the test itself but rather to the diverse factual situations to which it must be applied. We fail to see how adding two more prongs to the test would eliminate the problem. In any event, *these two additional elements would lead us to stray even further from the language of the statute. This we are not willing to do.*

*Id.* (emphasis added).

We are, likewise, unwilling to stray from the language of the statute. Therefore, our analysis will be limited to application of the *Faison* test which we are bound to apply.

## IV. *Faison* Analysis

The defendant argues on appeal that the State's evidence did not satisfy the *Faison* test's first and third prongs and that the captivity of the victims had ceased naturally once the robberies were complete. To the extent the defendant argued in the trial court that the second prong of the *Faison* test was not met, he has abandoned that argument on appeal, obviating the need for us to address the sufficiency of the evidence to support that prong. *Cf. Whitted v. State*, 362 So. 2d 668, 670 n.2 (Fla. 1978) (declining to consider point argued below in support of motion to dismiss because defendant failed to raise it on appeal). Thus, we will limit our review to the disputed prongs.

In furtherance of his argument, the defendant asserts that the confinement and movement of the four kidnapping victims in this case—the manager, the employee, and two of the customers—were incidental to the robberies and, quoting the *Berry* dicta, "cease[d] naturally" once the robberies were complete. In essence, the defendant suggests that *Berry* added an additional prong to the *Faison* test establishing a bright-line rule precluding any felony-facilitation kidnapping conviction if the captivity of the victim ceases naturally at the conclusion of the accompanying crime.

8

While we disagree with the notion that *Berry* added an additional prong or bright-line rule to the *Faison* test, the captivity of three out of the four kidnapping victims in this case did not cease naturally after they were robbed of their belongings. Instead, those three victims endured continued captivity after the crimes against each of them naturally ended—while the defendant and his co-defendants held the store manager captive and used him to complete their burglary and robbery of the store—which were separate and distinct crimes from the robberies of those three victims. Because the defendant could have robbed those three individual victims without robbing the store, or robbed the store without robbing those three individual victims, it cannot be said that the completion of the burglary and robbery of the store after completion of the robberies of the three individual victims was a natural continuation of the crimes committed against the three individual victims. It was only the captivity of the fourth person—the store manager—that ceased naturally as soon as the defendant and his co-defendants completed the burglary and robbery of the store. Thus, the defendant's "cease[d] naturally" argument is at best limited to the kidnapping conviction of the store manager.

We upheld a kidnapping conviction on facts substantially similar to those at issue here in *Brown v. State*, 727 So. 2d 337, 338 (Fla. 4th DCA 1999). *Brown* involved a robbery and burglary of a fast-food restaurant that "ultimately turned into a kidnapping." *Id.* "The defendant was found guilty with an accomplice of accosting an employee of the restaurant in its parking lot just after closing, whence they *forced* her back into the restaurant and into the office, in which they held her while they completed the robbery and burglary." *Id.* (emphasis added). We rejected the defendant's contention in that case that "the restraint and confinement of the employee was merely incidental to the robbery/burglary" and "affirm[ed] the kidnapping conviction as well as the robbery and burglary." *Id.*; *see also, e.g., Panno v. State*, 517 So. 2d 129, 131 (Fla. 4th DCA 1987) (determining that, under *Faison*, the forced movement of two teenaged girls from outside their home into their home "on pain of being hurt," and after "*shov[ing] one of them to the ground on the way to the house*," was "not merely incidental to the burglary" facilitated by kidnapping the girls (emphasis added)).

We also upheld a kidnapping conviction in another similar case, *Johnson v. State*, 509 So. 2d 1237 (Fla. 4th DCA 1987), where a convenience store clerk was made to hand over everything in the cash register at gunpoint. *Id.* at 1238. Thereafter, the clerk was "taken to a rear room" of the store and "ordered into a bathroom." *Id.* "The defendant barricaded the bathroom by tying shopping carts to the door in order to make it more difficult for the victim to escape." *Id.* Upon hearing the

9

defendant leave the store, the clerk "was able to open the door enough to squeeze her hand through, loosen the cord, and move the door sufficiently to escape." *Id.* While recognizing that application of the *Faison* test "continues to prove difficult in practice," *id.* at 1239, we concluded the facts in *Johnson* were sufficient to satisfy the test and affirmed the kidnapping conviction. *Id.* at 1240. In reaching this conclusion, we reasoned:

> Forcing the victim into the backroom, and then into the bathroom, was not inherent in the nature of the completed robbery. The fact that she was not injured nor tied up does not make the movement and confinement less significant. Here, barricading the victim in the room, even for a brief time, was intended to, and did, facilitate the defendant's escape and lessen the risk of his detection.

*Id.*

In *Castro v. State*, 122 So. 3d 912, 914-15 (Fla. 4th DCA 2013), we again upheld kidnappings committed during two separate liquor store robberies. *Id.* at 914. In concluding the confinement of the clerks in both robberies was sufficient to constitute kidnappings independent of the robberies, we emphasized that, according to *Berry*, "the first requirement of *Faison* did not require movement of the victim to constitute kidnapping." *Id.* (citing *Berry*, 668 So. 2d at 970). In affirming, we reasoned the victims in *Castro*, like the victims in *Berry*, were "left in a precarious position which made the crime substantially easier to commit and reduced the risk of detection." *Id.* at 915.

Applying the *Faison* test here, we conclude the confinement and movement of the employee who had been dragged on the floor by his belt before he was made to crawl to the room in the back of the store, and the two customers who were forced to crawl to the room in the back of the store or face the prospect of either being shot or violently dragged like the employee, was sufficient under *Faison*'s first and third prongs to support the defendant's convictions for kidnapping these victims.

The confinement of these victims was not "slight, inconsequential and merely incidental to" the underlying burglary and robberies because it was accomplished with "substantial force and violence" by virtue of these victims being made to crawl at gunpoint and threat of being violently dragged to the back room in the store [prong 1]. *Faison*, 426 So. 2d at 966. Their movement and captivity were not merely incidental to the robbery or other accompanying crimes. The gunmen could have simply

ordered the victims to the ground right where they found each of them and taken their belongings without violently dragging one of them and forcing the others to crawl at gunpoint under threat of being dragged to their room of captivity at the back of the store. Unlike the manager who was brought to the back room to empty the safe, the employee and two customers were not moved and confined in the back room for any reason that would be merely incidental to a burglary or robbery.

The compelled crawling of these three victims at gunpoint and under threat of being violently dragged as one of them was—to the room in the back of the store where they were held captive out of public sight well after each one of them was individually robbed, and until after the completion of the burglary and robbery of the store—distinguishes this case from other cases cited by the defendant, including *Walker*, 604 So. 2d at 476-77 (where the perpetrators ordered the victims to go to the back of the store and lie down but only moved a short distance towards the back of the store while refusing to lie down), *Wilcher v. State*, 647 So. 2d 1013 (Fla. 4th DCA 1994) (where the perpetrators simply "ushered" everyone to the back of the store and told everyone to lie down while they robbed the store), *Griffin v. State*, 705 So. 2d 572, 574 (Fla. 4th DCA 1998) (where the defendant's gun was never pointed at the child victim who simply followed her mother into an unlocked room at the back of the store), *Jackson v. State*, 436 So. 2d 1101, 1102 (Fla. 4th DCA 1983) (where the victim simply crossed over the threshold of an open door at gunpoint), *Russell v. State*, 874 So. 2d 1256, 1257-58 (Fla. 4th DCA 2004) (where "[t]he masked men grabbed [the clerk] by his shoulders and pulled him inside the store to the safe" to facilitate the robbery by forcing the clerk to open "the safe, then the cash drawer" so the robbers could "put [the] money in a brown paper bag"), *Lewis v. State*, 50 So. 3d 86, 87-88 (Fla. 4th DCA 2010) (where the perpetrator momentarily handcuffed the store manager and placed her in the bathroom so the perpetrator could lock the front door and return to move her to the front counter where he ordered her to lie down while she was being asked to divulge the combination code for the safe in furtherance of the attempted robbery), and *Orukotan v. State*, 85 So. 3d 542, 547 (Fla. 4th DCA 2012) (where "the confinement ceased *prior* to completion of the robbery" because the police had unexpectedly arrived and interrupted the robbery before it could be completed (emphasis added)).

Here, the captivity of these victims which continued well after each one of them had been individually robbed, while the defendant and his co-defendants proceeded with completing the burglary and robbery of the store, had "significance independent of" the underlying burglary and robberies. That is, the movement and captivity of these victims was not in

11

furtherance of completing the burglary and robberies, but instead was done to hold these victims in the back room out of public sight while the defendant and his co-defendants completed the burglary and robbery of the store, making these separate and distinct crimes "substantially easier" for the defendant to commit and "substantially lessen[ed his] risk of detection" [prong 3]. *Faison*, 426 So. 2d at 965. Thus, we affirm the felony-facilitation kidnapping convictions for the compelled movement and confinement of these three victims.

However, we conclude the movement and confinement of the store manager during the burglary and robberies does not meet the *Faison* test. The manager was never made to crawl at gunpoint and under violent threat to the back of the store independent of the robbery. The manager was moved to the back of the store to facilitate the robbery of the money in the safe and black box in the back room. The manager was also moved from the back of the store to the front of the store after the completion of the robberies of the individual victims to facilitate the robbery of the cash registers. This is precisely what the *Faison* test precludes—conviction for both a kidnapping and robbery when the criminal transaction inherently involved the unlawful confinement of another person incidental to the facilitating of the robbery. Here, the manager's movement and confinement were limited to facilitating the robbery from the safe, black box and cash registers he controlled as the store's custodian. We therefore reverse the defendant's conviction for kidnapping the manager.

Nonetheless, we are compelled by section 924.34, Florida Statutes (2015), to remand for entry of a judgment of conviction and resentencing on the lesser included offense of false imprisonment while armed and masked. Section 924.34 provides:

> When the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the appellate court *shall* reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.

§ 924.34, Fla. Stat. (2015) (emphasis added). "[W]hen all of the elements of a lesser offense have been determined by the jury, section 924.34 is a valid exercise of the legislative prerogative allowing appellate courts to direct a judgment for such an offense." *State v. Sigler*, 967 So. 2d 835, 844 (Fla. 2007).

All elements of false imprisonment were necessarily determined by the jury in this case to have been present as to the manager's confinement during the robbery. *See State v. Sanborn*, 533 So. 2d 1169, 1170 (Fla. 1988) ("[F]alse imprisonment is a necessarily lesser included offense of the crime of kidnapping."). Because "[t]he *Faison* test is not applicable to false imprisonment convictions" as held in *State v. Smith*, 840 So. 2d 987, 989 (Fla. 2003), a conviction for false imprisonment on the kidnapping count involving the store manager is not precluded. On remand, the trial court shall vacate the defendant's conviction for kidnapping the store manager, and shall, instead, enter judgment of conviction and resentencing on the lesser included offense of false imprisonment of the store manager while armed and masked.

While we apply *Faison* and its progeny in deciding this case because we are obligated to adhere to precedent, we are cognizant that in a recent pair of cases decided on the same day involving crimes in which dual convictions arose from a single transaction, our supreme court has determined that the now-abrogated common law single transaction rule—upon which *Faison* rests—cannot be reconciled with the post-*Faison* amendment to section 775.021, Florida Statutes, which clarified that "[t]he intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity . . . to determine legislative intent." *See* § 775.021(4)(b), Fla. Stat. (2015); *see also State v. Maisonet-Maldonado*, 308 So. 3d 63, 70-71 (Fla. 2020) (holding that *Houser v. State*, 474 So. 2d 1193 (Fla. 1985), which recognized the single homicide rule, was superseded by the 1988 amendment to section 775.021, and receding from *State v. Chapman*, 625 So. 2d 838 (Fla. 1993), to the extent it held otherwise); *State v. Marsh*, 308 So. 3d 59, 61-63 (Fla. 2020) (holding that dual convictions for DUI with serious bodily injury and DWLS with serious bodily injury are not prohibited, consistent with section 775.021(4)'s plain language, as interpreted in *Maisonet-Maldonado*, 308 So. 3d at 70-71).

*Faison* and its progeny were arguably superseded by the amendment to section 775.021(4), in that *Faison*'s rationale was premised on the now-abrogated common law single transaction rule. *See Gil v. State*, 118 So. 3d 787, 792 (Fla. 2013) ("The statute expresses the legislative intent that defendants be charged with every offense that arises out of one criminal episode *unless* an exception applies."); *Kelso v. State*, 961 So. 2d 277, 279 (Fla. 2007) (discussing common law single transaction rule as being "legislatively replaced" by the enactment of section 775.021); *see also* Richard Sanders, *"Double Offense" Problems in Kidnapping and False Imprisonment Cases*, 77 FLA. BAR. J. 10, 15 (Dec. 2003) ("Indeed, since

current § 775.021(4) was not in effect when *Faison* was decided, it could be argued that statute effectively overruled *Faison*.").

Thus, we certify to the Florida Supreme Court the following question of great public importance:

> Have *Faison v. State*, 426 So. 2d 963 (Fla. 1983), and its progeny been superseded by section 775.021(4), Florida Statutes?

*Affirmed in part, reversed in part, and remanded with instructions; question of great public importance certified.*

GERBER, J., concurs.
WARNER, J., concurs in part and dissents in part with an opinion.

WARNER, J., concurring in part and dissenting in part.

While I agree that the kidnapping conviction based upon the manager's confinement should be reversed, I disagree that the other three kidnapping convictions satisfy the *Faison* test. As to those convictions, I would also reverse, and thus I dissent.

To briefly recap the facts surrounding the three kidnapping convictions, appellant was convicted of kidnapping two store customers who were ordered to crawl to the back of the store during the robbery. They were not tied up or restrained in any way. He was also convicted of kidnapping a store employee who was knocked to the floor, dragged to the center of the store at gunpoint, and then made to crawl to the back of the store with the rest of the customers.

*Walker v. State*, 604 So. 2d 475 (Fla. 1992), is analogous. There, Walker entered a convenience store and took money from the cash register and a customer. *Id.* at 476. He then ordered all four people in the store to go to the back of the store and lie on the floor. *Id.* Three of them moved thirty or forty feet to the back but did not lie down. *Id.* After Walker threatened the fourth victim with a gun, the victim moved ten feet. *Id.* Walker was convicted of kidnapping, but the supreme court held that the *Faison* test was not met:

> We do not believe that the facts of this case fulfill the first prong of the *Faison* analysis. The limited movement and confinement of the four occupants within the interior of the store were not significant. *See Jackson v. State*, 436 So. 2d

14

1101 (Fla. 4th DCA 1983). Unlike in *Faison*, the victims were not dragged from room to room. They were not bound and blindfolded for half an hour as in *Marsh v. State*, 546 So. 2d 33 (Fla. 3d DCA 1989). They were not barricaded inside the bathroom like in *Johnson v. State*, 509 So. 2d 1237 (Fla. 4th DCA 1987), nor were they taken out of the store and put in the restroom located in the rear as in *Ferguson*. Further, the facts relied upon to support the kidnapping occurred within a matter of seconds.

*Id.* at 477. I believe that *Walker* requires the reversal of the kidnapping convictions for the two customers ordered to crawl to the back of the store. I do not find that crawling rather than walking makes any difference as to whether the confinement was slight, inconsequential, and incidental to the crime of robbery. Furthermore, at least one of the customers was threatened with a gun in *Walker*,[1] yet the supreme court still found this insufficient to satisfy *Faison*. Therefore, threatening the customers with a gun does not change the *Faison* analysis.

The kidnapping conviction for dragging the employee to the middle of the store also does not satisfy the first prong of *Faison* based upon our prior precedent. In *Russell v. State*, 874 So. 2d 1256 (Fla. 4th DCA 2004), we held that the trial court erred in denying a motion for judgment of acquittal on a kidnapping charge. There, a clerk of a convenience store was outside and saw two robbers approaching. *Id.* at 1257. They were holding a shovel and a machete and yelled at the clerk. *Id.* The clerk backed up and fell. *Id.* They grabbed him and pulled him inside the store to the safe, which he opened. *Id.* The robbers were charged with both robbery and kidnapping. *Id.* At trial, the court denied a motion for judgment of acquittal on the kidnapping charge, and the defendant was convicted of the lesser offense of false imprisonment. *Id.*

On these facts, we held that the court should have granted the motion for judgment of acquittal as to the kidnapping charge, because the evidence did not satisfy the first prong of the *Faison* test. *Id.* We said:

We are unpersuaded by the state's contention that the movement in this case was not slight or inconsequential because the victim was outside of the store and dragged in. We find no logical distinction, in terms of evaluating the

---

[1] In the district court opinion, the court noted that Walker threatened all four occupants with a gun. *See Walker v. State*, 585 So. 2d 1107, 1107 (Fla. 2d DCA 1991).

nature of the movement under *Faison*, between a case where the defendant moves the victim from one room to another within a building to effectuate a crime and the situation presented in this case.

*Id.* at 1258. Based upon *Russell*, dragging a victim a few feet in the store would constitute slight or inconsequential movement.

In the *Faison* case itself, the defendant dragged the first victim from an office reception area to the back where he sexually assaulted her. *Faison v. State*, 426 So. 2d 963, 964 (Fla. 1983). Later that same day, the defendant broke into a home where he "violently" dragged another woman from the kitchen down a hallway into the bedroom to sexually assault her. *Id.* In evaluating the first prong of the test it established, the court found that:

> The movements of both victims were effected by substantial force and violence inflicted by Faison to overcome their resistance and to make them to go where he wanted. It cannot be said, therefore, that the asportations were either slight, inconsequential or merely incidental to the sexual batteries which followed.

*Id.* at 966. Thus, dragging a victim from room to room may involve substantial force and violence which may not be considered inconsequential. I do not view the facts of this case, however, to amount to a sufficient use of force and violence to satisfy the *Faison* test in light of the supreme court opinions and *Russell.*

I wholeheartedly agree with the supreme court when it wrote in *Berry v. State*, 668 So. 2d 967, 970 (Fla. 1996), "While we agree that the current test is not an easy one to apply, we attribute this difficulty not to the test itself but rather to the diverse factual situations to which it must be applied." And the problem is that many of the distinctions between the cases are so slight that one wonders how justice is served when seemingly similar factual circumstances reach decidedly different results.

I also disagree with the certified question presented by the majority. Whether *Faison* has been superseded by section 775.021(4), Florida Statutes, was never raised in this appeal, and the parties have never had an opportunity to provide argument on the applicability of the statute. In its motion for rehearing, the State never contested *Faison* or argued for the application of the statute. Moreover, the majority doesn't actually decide the issue, noting only that the statute may "arguably" supersede *Faison.*

The court should not decide issues not raised and which do not affect this court's jurisdiction. It should not certify questions based on issues unnecessary to the ultimate decision in this case. That is, in effect, asking the Florida Supreme Court to issue an advisory opinion.

For these reasons, I dissent.

*　　*　　*

***Not final until disposition of timely filed motion for rehearing.***